UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMARA L. A. SIMMONS,<br><br>    Plaintiff,<br><br>         v.<br><br>ANTONY J. BLINKEN,<br><br>    Defendant. | Civil Action No. 23-2437 (JEB) |

## MEMORANDUM OPINION

Plaintiff Samara L. A. Simmons has worked at the State Department for the past decade. After enduring what she describes as a series of discriminatory and retaliatory acts, Simmons decided to file Rehabilitation Act complaints against State with the Equal Employment Opportunity Commission. Before the EEOC could declare a winner in that battle, however, the parties entered into a settlement agreement. Simmons agreed to drop her complaints, and Defendant in turn agreed to pay her a sum of money and promised to address the conduct that gave rise to her charge in the first place.

Peace between the parties was unfortunately fleeting. Contending that State breached the agreement by neglecting to destroy sensitive medical records, Plaintiff brings this suit to enforce the terms of the agreement, reinstate the Rehabilitation Act complaints she had previously pursued, and press a new Rehabilitation Act count for unlawful disclosure of her confidential medical information. Defendant now moves to dismiss, contending that this Court lacks jurisdiction over most of this case and that the small parts that are properly before it are meritless. The Court agrees that, for one reason or another, none of the claims may proceed. It will accordingly grant the Motion.

1

**I.    Background**

    A.  <u>Factual Background</u>

As always, the Court draws on the facts as pled in the Amended Complaint, assuming them to be true. See <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000). It also considers the additional facts set forth in the undisputed documents incorporated in the Complaint that are integral to the claim, as well as matters of which it may take judicial notice, without converting this into a motion for summary judgment. See <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997); <u>Pernice v. Bovim</u>, 2015 WL 5063378, at *3 (D.D.C. Aug. 26, 2015) (explaining that courts may consider documents attached by defendant to motion to dismiss "if they are integral to [a plaintiff's] claim, they are referred to in the complaint, and their authenticity is undisputed").

Simmons has worked as a foreign-service officer at the State Department since 2013. <u>See</u> ECF No. 13 (Am. Compl.), ¶ 72. She was initially assigned to the American consulate in Ciudad Juarez, Mexico, and eventually found her way to the Overseas Citizen Services/American Citizen Services within the Agency's Bureau of Consular Affairs, where she remains. <u>Id.</u>, ¶¶ 72, 75. Although Plaintiff's unnecessarily prolix Complaint spares no detail in recounting the events that led to this suit, the Court will focus mostly on the four incidents that were resolved by the settlement agreement at the heart of this case. <u>Id.</u>, ¶ 36 (listing said incidents).

The first, which took place in October 2015, was her transfer from the Ciudad Juarez post. <u>Id.</u> In taking such action, Plaintiff posits, State discriminated against her based on her "migraine condition" and perceived mental disabilities, and it retaliated against her "for her EEO activity." <u>Id.</u>, ¶¶ 36, 81, 92, 97–98. In February 2016, Defendant allegedly discriminated

and retaliated against Simmons for a second time by ordering her to report to the Department's Bureau of Medical Services for medical and psychiatric examinations. Id., ¶¶ 36, 143–47. This evaluation was (at least according to the State Department) part of a broader investigation into Plaintiff's eligibility to maintain her security clearance. Id., ¶ 143. The third instance of ostensible discrimination and retaliation happened around the same time, when the Agency forced Simmons into "sign[ing] a medical release" in order to obtain her health records from East Orange General Hospital, a facility she had been admitted to in the past. Id., ¶ 36. This, too, seems to have been part of the aforementioned security-clearance investigation. Id., ¶ 131. By purportedly using Plaintiff's signed release to obtain medical records outside its scope from East Orange, State committed the fourth and final act of discrimination and retaliation. Id., ¶¶ 36, 133–35.

Simmons, none too happy with this perceived pattern of discrimination and retaliation, filed a formal complaint with the EEOC in late February 2016. Id., ¶ 15. Two years' worth of administrative processing ensued, after which Plaintiff's case was reduced to the four events described above. Id., ¶¶ 16–30. Instead of having the Administrative Law Judge on the case resolve these outstanding claims at that point, however, the parties chose to delay so that they could pursue a possible settlement. Id., ¶ 33. As part of this undertaking, the Agency allowed Simmons to review the documents that made up her Diplomatic "Security File" so that she could "identify portions of the file that she sought to have expunged, amended, or redacted." Id.

These efforts ultimately proved successful: the parties entered into a settlement in March 2019. Id., ¶ 36; see ECF No. 16-2 at 4–7 (Settlement Agreement). Under its terms, Plaintiff agreed to "relinquish, waive, forego, forever discharge, fully release, and quit for all time" the four discrimination and retaliation claims that were still pending before the EEOC. See

Settlement Agreement, ¶ 3. State, for its part, agreed to pay Simmons $29,000, destroy all physical and electronic copies of Plaintiff's East Orange records currently in its possession, and "expunge" from any copies of Simmons's "DS Security File" five categories of information. Id., ¶ 4. The agreement further clarified that Plaintiff's "DS Security File" included the records "that were produced to [Simmons] in redacted form" during the parties' settlement discussions. Id.

The settlement also laid out the process for handling allegations of non-compliance on the part of Defendant. Plaintiff was to notify the Agency's Office of Civil Rights in writing within 30 days of discovering the alleged breach, and OCR would then look into the matter to determine whether the agreement was or was not breached. Id., ¶ 5. Should "material noncompliance" be established, Simmons could then seek one of two solutions: have the terms of the agreement "specifically implemented" or have her EEOC complaint "reinstated for further processing." Id. If she picked the latter, the administrative process would pick back up "from the point processing ceased." Id. (noting that parties would be returned to "*status quo ante*" if this solution was sought). And if she was unhappy with the State Department's resolution of any allegations of breach, Simmons could seek relief from the EEOC so long as she filed her appeal there within 30 days of Defendant's determination of breach or lack thereof. Id.

As any reader of this Opinion might by now have deduced, this agreement did not in fact settle the dispute between our parties. About two months after they executed this agreement, Plaintiff filed a Freedom of Information Act request to State's Bureau of Diplomatic Security seeking all records in her security file. See Am. Compl., ¶ 43. Simmons could thereby obtain proof of whether the Government had held up its end of the bargain. What she says she

received in subsequent FOIA litigation, though, was evidence that "the Agency [had] breached the Settlement Agreement." Id., ¶ 46. Specifically, she alleges that the Government's response to her FOIA request revealed that the State Department had failed to expunge various documents from her security file, including some of the records that were "produced to . . . Plaintiff in partially redacted form as described in" the agreement. Id., ¶¶ 47–54. The Government, she continues, also neglected to destroy all copies of her East Orange medical records that were contained in her Security File. Id., ¶ 58.

      B.  Procedural Background

Armed with this knowledge, Plaintiff brought breach claims to OCR in both May 2022 and August 2022. The first argued that State had not expunged her security file as promised in the agreement, that the agreement itself was not supported by adequate consideration, and that there had been "a lack of meeting of the minds" as to the term "DS Security File." Id., ¶ 57. The second contended that Defendant had never destroyed Simmons's medical records and again noted the absence of consideration. Id., ¶ 59. As to both, she "specifically sought relief in the form of reinstatement of her underlying claims." Id., ¶¶ 57, 59. OCR found for the Agency on both charges, a decision that was subsequently upheld on appeal. Id., ¶¶ 60–61.

This, at last, brings us to this case. Simmons's initial Complaint contained four counts, the first of which was titled "Breach of EEOC Settlement Agreement." See ECF No. 1 (Compl.), ¶¶ 166–87. Counts II through IV, meanwhile, sought to reinstate the underlying Rehabilitation Act claims that were resolved by the agreement. Counts II and III respectively alleged Rehabilitation Act discrimination and retaliation based on the four incidents recounted earlier. Id., ¶¶ 188–222. Count IV also alleged Rehabilitation Act discrimination based on "prohibited medical examinations and inquiries"— namely, asking Plaintiff to sign a release

5

and using that release to obtain her East Orange medical records. Id., ¶ 227. Plaintiff's prayer for relief, which did not distinguish among the four counts, included a demand for "compensatory damages" for "past and future pecuniary losses" as well as "emotional pain and suffering." Id. at 58.

A few months after she initiated this suit, Plaintiff realized that she had somehow left something out of her nearly 60-page initial Complaint. She accordingly amended her Complaint to add one more count under the Rehabilitation Act, apparently based on the fact that Defendant had unlawfully disclosed her medical records. See Am. Compl., ¶¶ 242–63. The other four counts from the initial Complaint remain as originally pled, as does Simmons's prayer for, *inter alia*, economic and non-economic damages. Defendant has now moved to dismiss all five counts of the Amended Complaint — which is the operative pleading here — or, alternatively, for summary judgment. See ECF No. 16 (MTD).

## II.     Legal Standard

As the Court does not consider this as a motion for summary judgment, it sets out only the motion-to-dismiss standards. Defendants' Motion to Dismiss invokes Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant files a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff generally "bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 172–73 (D.D.C. 2020)); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am.

6

Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). While a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

**III.   Analysis**

In seeking dismissal, Defendant first argues that because Count I is a contract claim against the Government, this Court lacks subject-matter jurisdiction over it. Even if it is not, the Agency insists that it is legally deficient. Counts II, III, and IV must similarly be dismissed, State continues, though for a different jurisdictional reason — *viz.*, they are not yet ripe for judicial resolution. As to Count V, Defendant contends that it meets the same fate as its counterparts because it is facially infirm. The Court will proceed through the causes of action in that order.

A.   Count I

The Tucker Act grants the Court of Federal Claims sole jurisdiction over claims seeking more than $10,000 against the Government "founded . . . upon" a contract. See 28 U.S.C. § 1491(a)(1). Under Circuit precedent, it "impliedly forbids" district courts from exercising

7

jurisdiction over any matter that is "essentially a contract action," to the extent the damages sought exceed that sum. Albrecht v. Comm. on Emp. Benefits, 357 F.3d 62, 68 (D.C. Cir. 2004); Associated Mortg. Bankers Inc. v. Carson, 279 F. Supp. 3d 58, 65 (D.D.C. 2017) ("The D.C. Circuit has interpreted the Tucker Act to impliedly forbid 'contract claims against the Government from being brought in district court under the [sovereign-immunity] waiver in the APA.'") (citation omitted). Such actions "must be brought under the Tucker Act in the Court of Federal Claims," even if the plaintiff does not explicitly ask for damages. Yee v. Jewell, 228 F. Supp. 3d 48, 56 (D.D.C. 2017). Settlement agreements such as the one here, moreover, are contracts for these purposes. See Shaffer v. Veneman, 325 F.3d 370, 372 (D.C. Cir. 2003).

To determine whether a given suit falls into this bucket, courts look to "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." Megapulse, Inc. v. Lewis, 672 F.2d 959, 968 (D.C. Cir. 1982). Most simply, a settlement agreement is the "source of the rights" to the extent that a plaintiff is suing for "breach of a settlement agreement." Schmidt v. Shah, 696 F. Supp. 2d 44, 60 (D.D.C. 2010). Less obviously, the same is true for "any claims that rely on the existence of a breach." Id. at 60–61. By contrast, a suit is not based on a contract if resolving it "requires interpreting [a statute], not [the] contract." Allen v. Napolitano, 774 F. Supp. 2d 186, 196 (D.D.C. 2011) (noting that this is so even if other claim "relat[es] to a settlement agreement"). Finally, an action is more likely to fall under the Tucker Act if it seeks traditional contractual remedies like specific performance or compensatory damages. See Perry Capital, LLC v. Mnuchin, 864 F.3d 591, 619 (D.C. Cir. 2017).

To recite the applicable law is to explain why Count I of the Amended Complaint belongs in the Court of Federal Claims and not here. For starters, this count (which, recall, is

8

titled "Breach of EEOC Settlement Agreement") alleges that State failed to do the two things it promised under the agreement: destroy Simmons's medical records and expunge her "DS Security File." See Am. Compl., ¶ 174. In other words, it alleges that the State Department "breached the terms of its settlement agreement with" Plaintiff. Brown v. United States, 389 F.3d 1296, 1297 (D.C. Cir. 2004); Am. Compl., ¶¶ 176 (failure to destroy medical records "constitutes a breach of the Settlement Agreement"), 177 (Defendant "breached paragraph 4(c) of the Settlement Agreement" by neglecting to expunge file). Far from merely mentioning the contract offhandedly, then, Count I "turns entirely on the terms of" the parties' agreement. Albrecht, 357 F.3d at 69. Indeed, the Court would not even need to reference the Rehabilitation Act to resolve this dispute. Contra ECF No. 18 (Pl. Opp.) at 17–18. As such, Plaintiff's Amended Complaint makes it clear that the "source of the rights" she seeks to enforce in Count I is the settlement agreement, not a federal statute like the Rehabilitation Act.

The "type of relief" that Simmons asks for underscores that this count sounds in contract. Her Amended Complaint requests over $300,000 in damages for losses related to the breach. See Am. Compl. at 64 (Prayer for Relief); see also id., ¶ 188 ("As a proximate result of the Agency's breaches, Plaintiff has suffered and continues to suffer damages and losses . . . ."). Certain of those damages, such as "past and future pecuniary losses," id. at 64 (Prayer for Relief), "are a prototypical contract remedy." A&S Council Oil Co. v. Lader, 56 F.3d 234, 240 (D.C. Cir. 1995). As if that were not enough, she also wants this Court to reinstate her discrimination and retaliation causes of action because of the Government's alleged breach. See Am. Compl., ¶ 187. Given that Simmons invokes "paragraph 5 of the Settlement Agreement" in pursuing this remedy and that the agreement itself contemplates reinstatement, see id.; Settlement Agreement, ¶ 5, it is hard to see this as anything other than a demand for specific

9

performance. This, too, is a "classic contractual remedy." Spectrum Leasing Corp. v. United States, 764 F.2d 891, 894 (D.C. Cir. 1985).

Plaintiff rejoins that, in spite of all of this, Count I is not actually a contract claim but merely a means of clearing the way for her discrimination claims. See Pl. Opp. at 17–19. To bolster her position, she points to this Court's Opinion in Hall v. Nielsen, 2019 WL 250972 (D.D.C. Jan. 17, 2019). Id. There, the plaintiff and the Department of Homeland Security had reached a settlement to avoid litigating the former's numerous discrimination claims. Hall, 2019 WL 250972, at *1–2. After the Government sought dismissal on the same jurisdictional grounds it does here, the Court held that the plaintiff's case was not a contract action and thus fell out of the exclusive jurisdiction of the Court of Federal Claims because he "[did] not seek" any relief founded on the settlement agreement between him and the Government. Id. at *3. In other words, the Court found that the "source of his rights" was not contractual; he sought a declaration that the agreement was void only in the course of pursuing his discrimination causes of action. Id. The plaintiff in Hall, as the Court explained, was thus not seeking to "vindicate his rights under the settlement" but was instead anticipating the Government's settlement-agreement defense and attempting to disarm it before it had a chance to take off. Id. (clarifying that contract was not basis for plaintiff's "independent requests for relief"). Since the Amended Complaint here alleges that the agreement is "voidable" because there was no consideration exchanged and "there was no meeting of the minds" as to the meaning of the term "DS Security File," Plaintiff insists that her strategy is the same as the Hall plaintiff's. See Am. Compl., ¶¶ 189, 192.

What Plaintiff actually seeks to accomplish under Count I, however, is quite different. As described above, this cause of action attempts to recover, *inter alia*, damages stemming from

the State Department's supposed breach of the agreement. While it is true that Simmons also alleges that the agreement is "voidable" for the reasons stated above, that does not make much of a difference. She contends that there was no "meeting of the minds" on one of the agreement's terms, but the substance of her argument is that the Agency breached by failing to expunge the confidential material from all of the records that made up her security file. See Am. Compl., ¶¶ 192–94 (charging State with not redacting some of the records "to which the Settlement Agreement referred"). After all, Plaintiff is not suggesting that the parties never agreed to this term, but only that they now disagree as to its referent. Even under this theory, then, this cause of action still "rel[ies] on the existence of a breach." Schmidt, 696 F. Supp. 2d at 61.

The second contention — that the contract is void for lack of consideration — gets closest to the mark, since that would mean there was "not a contract at all." See Restatement (Second) of Contracts § 7 cmt. a (1981). Even assuming that this theory strips Count I of its contract facade and thus takes it outside the ambit of the Tucker Act — an idea the D.C. Circuit has not yet approved of, see Kline v. Cisneros, 76 F.3d 1236, 1239 (D.C. Cir. 1996) — it does not prevail for the simpler reason that it has no merit. As Defendant rightly notes, it agreed to and did pay Simmons $29,000 as part of its bargain, and this alone is sufficient consideration to sustain the settlement here. See MTD at 16. Because Plaintiff does not even respond to this contention in her Opposition, the Court need say no more.

At the end of the day, no matter the theory, Count I of Simmons's Amended Complaint cannot proceed in this Court without some creative reimagining of the allegations undergirding it. Cf. Arbitraje Casa de Cambio, S.A. de C.V. v. United States Postal Serv., 298 F. Supp. 2d 165, 170 (D.D.C. 2003) ("[A] complaint may not be amended by the briefs in opposition to a

motion to dismiss."). Perhaps recognizing as much, Plaintiff ends her Opposition by seeking leave to amend her Complaint for a second time to "address those deficiencies." Pl. Opp. at 40. Since the appropriate vehicle for that would be an independent Motion to Amend, the Court will not consider it here and will instead dismiss Count I. See Benoit v. United States Dep't of Agric., 608 F.3d 17, 21 (D.C. Cir. 2010) (highlighting that "a request for leave [to amend] must be submitted in the form of a written motion").

    B.  Counts II–IV

Next up are Counts II through IV, which are the underlying Rehabilitation Act discrimination and retaliation claims that were settled by the agreement. Defendant submits that, in the event Count I does not survive, these must also be dismissed because they are not "ripe for judicial resolution." MTD at 20. "Jurisdiction requires that a claim be ripe for decision," Colorado Wild Horse & Burro Coalition Inc. v. Salazar, 890 F. Supp. 2d 99, 102 (D.D.C. 2012), as "Article III does not allow a litigant to pursue a cause of action to recover for an injury that is not 'certainly impending.'" Wyoming Outdoor Council v. U.S. Forest Serv., 165 F.3d 43, 48 (D.C. Cir. 1999) (citation omitted); see also Full Value Advisors, LLC v. SEC, 633 F.3d 1101, 1107 (D.C. Cir. 2011) ("A claim is not ripe where the possibility that further consideration [by an administrative agency] will actually occur before [implementation of its decision] is not theoretical, but real.") (cleaned up). If a plaintiff's claim "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," then that claim is unripe. Texas v. United States, 523 U.S. 296, 300 (1998) (citation omitted); Chamber of Commerce of United States v. Reich, 57 F.3d 1099, 1100 (D.C. Cir. 1995) (claim not ripe "when deferring consideration might eliminate the need for review altogether").

As State explains, these claims are keyed to Count I, since the agreement itself conditions reinstatement of the former on Plaintiff's establishing "material noncompliance" at OCR, before the EEOC, or before a court (that has jurisdiction). See Settlement Agreement, ¶ 5. As such, the Agency maintains that resolution of these causes of action would be premature because none of these actors has determined that the agreement was materially breached. See MTD at 21; Hansson v. Norton, 411 F.3d 231, 234 (D.C. Cir. 2005) (in indistinguishable scenario, discrimination suit "would be waived by [] execution of the . . . Agreement and could not be pursued until it was reinstated . . . or until there was a determination that the [Agency] had breached the Agreement"). Even if a court were to find that the agreement was breached, the Government further argues that the same conclusion would follow, since the agreement provides only for reinstatement "for further processing from the point processing ceased[.]" See Settlement Agreement, ¶ 5 (emphasis added). Since that "point" was immediately prior to a hearing before the EEOC, Simmons would have to go back there to adequately exhaust her administrative remedies, and she could then return to court only if the EEOC denied her discrimination and retaliation claims. See MTD at 21. Whichever way you slice it, says State, these counts "are not presently ripe for judicial resolution." Id. at 22.

Even Plaintiff agrees. She concedes that, "[a]s currently framed, Counts 2, 3, and 4 cannot be addressed until Count 1 is resolved." Pl. Opp. at 33. The Court, therefore, will join this rare point of agreement because it concurs that these counts "depend[] on future events that may never come to pass" — *i.e.*, a finding that State materially breached the agreement or a denial of relief at the end of the administrative proceedings currently on hold. Devia v. Nuclear Regul. Comm'n, 492 F.3d 421, 425 (D.C. Cir. 2007) (citation omitted). Jumping into the fray

13

now, then, would only result in "a decision that the Court may never need to make." Id. at 425 (cleaned up). The Court will thus dismiss these counts as well.

### C. Count V

Last is Count V. Although this count, like the rest of the Amended Complaint, is at times difficult to parse — and also suffers from the same disease of excessive wordiness — it seems to allege violations of the Rehabilitation Act's confidentiality provisions, which prohibit the disclosure of confidential medical information. See Am. Compl., ¶¶ 242–63 (citing 42 U.S.C. §§ 12112(d)(3), (4)). Specifically, Simmons charges the Agency with disclosing the information it obtained from her East Orange medical records to the State Department's Office of Inspector General, the State employees who processed her 2022 FOIA request, and the Assistant United States Attorney handling the concomitant FOIA litigation. Id., ¶¶ 253, 258–59.

To make out a violation of the Act's confidentiality provisions, Plaintiff must show that there was an unlawful disclosure of protected information — *i.e.*, a disclosure to someone "lacking 'need to know' status," Porfiri v. Eraso, 121 F. Supp. 3d 188, 199 (D.D.C. 2015) — and that this "resulted in a 'tangible injury.'" Koch v. Walter, 935 F. Supp. 2d 164, 176 (D.D.C. 2013) (citation omitted). Absent a showing of injury, a merely "technical violation" of these provisions will not "give rise to damages liability." Porfiri, 121 F. Supp. at 199 (quoting Giaccio v. City of New York, 502 F. Supp. 2d 380, 386–87 (S.D.N.Y. 2007)). The overarching goal of this inquiry is to "ensur[e] that the information disclosed [to an employer] pursuant to [its] medical inquiry spreads no farther than necessary to satisfy the legitimate needs of both employer and employee." Doe v. United States Postal Serv., 371 F.3d 339, 344 (D.C. Cir. 2003) (cleaned up).

Defendant attacks Simmons's showing on both fronts, positing that she has not established that the alleged disclosures were unlawful or that she was injured by them. See ECF No. 19 (Def. Reply) at 9–10. The Court shares the Government's doubts as to the latter; indeed, Plaintiff's injury allegations read like a boilerplate collection of harms with no obvious connection to the dissemination of her information. See Am. Compl., ¶ 263 (listing, *inter alia*, "delayed tenure, denied promotion," and loss of "work privileges"). But it sees no need to turn those qualms into a holding, as Plaintiff has not identified an instance in which her medical information was disclosed to an individual "lacking 'need to know' status," Porfiri, 121 F. Supp. 3d at 199, as the Court now explains.

Start with the disclosures to the State Department's OIG. Plaintiff never alleges why, when, or to what extent her medical information was shared with OIG, but the Amended Complaint implies that it was done in connection with one of the many OIG investigations into her complaints she refers to elsewhere. See Am. Compl., ¶¶ 136–37, 161–63. This being so, Plaintiff is out of luck, as the Rehabilitation Act and EEOC regulations alike permit disclosures whenever confidential information is requested by "government officials investigating compliance" with the Act. See 42 U.S.C. § 12112(d)(3)(B)(iii); 29 C.F.R. § 1630.14(b)(1)(iii) ("Government officials investigating compliance with this part shall be provided relevant information on request."); see also Grimes v. New York & Presbyerian Hosp., 2024 WL 816208, at *13 (S.D.N.Y. Feb. 26, 2024) (confidentiality provisions permit disclosure to "the government when it is investigating . . . compliance with" Rehabilitation Act). Simmons's assertion that "[n]o basis existed for the Agency, or any units within the Agency, to" review her medical records thus falls far short of showing that this disclosure was not necessary to conduct an internal investigation — which she herself prompted, see, e.g., Am. Compl., ¶¶ 161–63 —

15

into her allegations of State misconduct.  See Am. Compl., ¶ 257; cf. Koch v. White, 35 F. Supp. 3d 37, 40 (D.D.C. 2014) (no unlawful disclosure where OIG gains "incidental access" to confidential medical information "while performing a lawful search, in connection with a lawful investigation").

The disclosures to Defendant's "FOIA Litigation and Appeals Unit" in connection with Simmons's 2022 FOIA request and to the AUSA assigned to her FOIA lawsuit are equally valid.  While, to the Court's knowledge, there is no precedent addressing this fact pattern — *viz.*, a plaintiff trying to use the confidentiality provisions of the Rehabilitation Act to effectively prevent the Government from even responding to her FOIA request — a few have confronted the related scenario of a litigant attempting to use these provisions to limit discovery into information covered by the Act.  See, e.g., In re Nat'l Hockey League Player's Concussion Inj. Litig., 120 F. Supp. 3d 942 (D. Minn. 2015).  These courts agree that the provisions do not extend so far, concluding that obtaining or disclosing confidential information "for the purpose of defending oneself in ongoing litigation is a legitimate purpose."  Id. at 952 (quoting Floyd v. SunTrust Banks, Inc., 878 F. Supp. 2d 1316, 1325 (N.D. Ga. 2012)).  These courts also explain that these disclosures are sometimes necessary to "further the purpose" of the Act, since a plaintiff may not be able to establish her discrimination claims absent discovery into confidential medical information.  Scott v. Leavenworth Unified Sch. Dist. No. 453, 190 F.R.D. 583, 586–87 (D. Kan. 1999).

These principles are equally applicable to the case at hand, as these alleged disclosures were necessary to both parties here.  Defendant needed to share Simmons's information to "defend[] [itself] in ongoing litigation," Floyd, 878 F. Supp. 2d at 1325, while Plaintiff had an interest in State's doing so to eventually "discover facts that might help" her make out her FOIA

and Rehabilitation Act causes of action.  Scott, 190 F.R.D. at 587.  And it was Simmons, not the State Department, who "put her medical [information] at issue" by submitting a FOIA request and then filing a lawsuit seeking her records.  Floyd, 878 F. Supp. 2d at 1327.  She must have (or should have) realized that the Government employees assigned to this matter would have to review the records she asked for, records that could include her confidential medical information.  Cf. id. (when plaintiff "puts her medical status at issue, she waives her right to object to the discovery of her medical records").

Instead of acknowledging the foregoing, Plaintiff's Amended Complaint simply states that neither set of actors had "authority to review" records containing her medical information; it does not say why that is so or whether these disclosures were broader than necessary.  See Am. Compl., ¶¶ 258–59.  Even at this stage, these "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  The Court thus finds that the Rehabilitation Act's confidentiality provisions "do[] not create a privilege that wholesale bars" the Government from internally disclosing confidential medical information in the course of responding to a FOIA request or lawsuit, especially where there is no allegation that the Agency disseminated Simmons's information further than necessary to achieve this end.  In re Nat'l Hockey, 120 F. Supp. 3d at 952.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss.  A separate Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: July 2, 2024